# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Marc S. Antonucci, | : | |
| Debtor. | : | Bankruptcy No. 16-16702-MDC |
| | | |
| Provident Bank, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 16-00447-MDC |
| Marc S. Antonucci, | : | |
| Defendant. | : | |

# **MEMORANDUM**

BY: MAGDELINE D. COLEMAN, CHIEF UNITED STATES BANKRUPTCY JUDGE

## I.    INTRODUCTION

Before the Court for disposition are two separate matters in the bankruptcy case of Marc S. Antonucci (the "Debtor"). First, the Debtor seeks to avoid a judgment lien (the "Lien Avoidance Motion")[1] in favor of Provident Bank ("Provident," and together with the Debtor, the "Parties") in the amount of $7,391,404.88 pursuant to §522(f) of the Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), which permits a debtor to avoid a judicial lien that impairs an exemption to which the debtor may be entitled.

Second, Provident seeks a determination (i) that the Debtor is not entitled to a general discharge pursuant to §727(a)(2) of the Bankruptcy Code, which in general prohibits a debtor's discharge where the debtor has engaged in misconduct with respect to property of the debtor or of the estate in an attempt to hinder, delay or defraud a creditor, and (ii) that the Debtor's judgment debt to Provident cannot be discharged pursuant to §§523(a)(2)(A) and (a)(2)(B) of the Bankruptcy Code, which except from a

---

[1] Bankr. Docket No. 25.

debtor's general discharge debts either (a) incurred by false pretenses, false representations, or actual fraud, or (b) incurred through a materially false written statement a debtor made with intent to deceive respecting the debtor's financial condition on which a creditor reasonably relied (the "Nondischargeability Action").[2]

For the reasons set forth below, the Court finds Provident has established that the Debtor is not entitled to a general discharge pursuant to §727(a)(2), and therefore will rule in favor of Provident in the Nondischargeability Action. With respect to the Lien Avoidance Motion, the Court will allow the Parties the opportunity to address the legal issue of whether the denial of the Debtor's discharge precludes the Debtor from avoiding Provident's judgment lien.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[3]

### A. Provident's Pre-Petition Funding and the Debtor's Personal Guaranties

Provident is a New Jersey chartered stock capital savings bank. The Debtor was, at all times relevant here, a shareholder and officer of Specialty Flooring Systems, Inc. ("Specialty Flooring") and a managing member of Antar Realty, L.L.C. ("Antar"). Specialty Flooring was a flooring contractor headquartered in South Plainfield, New Jersey. Antar was a real estate company established to buy the building out of which Specialty Flooring was operating.

On or about February 5, 2010, Provident provided a working line of credit facility to Specialty Flooring in the amount of $3,000,000.00 (the "Revolving Credit Loan"). On November 5, 2010, Provident made (i) a term loan to Specialty Flooring in the amount of $2,000,000.00 (the "Specialty Flooring Term Loan," and together with the Revolving Credit Loan, the "Specialty Flooring Loans"), and (ii) a mortgage loan to Antar in the amount of $1,893,750.00 (the "Antar Loan"). In connection with the Specialty Flooring Loans, the Debtor executed a Guaranty of Payment (the "Specialty Flooring Guaranty") dated November 5, 2010, by which the Debtor unconditionally guaranteed Specialty

---

[2] Adv. Pro. Docket No. 1.

[3] All facts cited herein are derived from the parties' proposed findings of fact submitted after the trial in this matter. Bankr. Docket Nos. 19, 20.

2

Flooring's full payment and performance obligations with respect to the Specialty Flooring Loans. Likewise, in connection with the Antar Loan, the Debtor executed a Guaranty of Payment (the "Antar Guaranty," and together with the Specialty Flooring Guaranty, the "Personal Guaranties") dated November 5, 2010, by which the Debtor unconditionally guaranteed Antar's full payment and performance obligations with respect to the Antar Loan.

Each of the Personal Guaranties included the following term, whereby the Debtor warranted the accuracy of information and completeness of material disclosures contained in all documents provided to Provident in connection with the extensions of credit Provident gave to Specialty Flooring and Antar, respectively:

> 12. <u>Accuracy of Information; Full Disclosure</u>.  Guarantor represents that neither this Guaranty nor any documents, financial statements, reports, notices, schedules, certificates, statements or other writings furnished by or on behalf of Guarantor to Lender in connection with the negotiation of the Loan Documents or the consummation of the transactions contemplated thereby, or required herein or by the other Loan Documents to be furnished by or on behalf of Guarantor, contains any untrue or misleading statement of a material fact; there is no fact that Guarantor has not disclosed to Lender in writing that materially affects adversely any of the Collateral covered by the Loan Agreement or the business affairs or financial condition of Guarantor, or the ability of Guarantor to perform this Guaranty and the other Loan Documents to which Guarantor is a party.

Specialty Flooring Guaranty, at ¶12;[4] Antar Guaranty, at ¶12.[5]

On November 16, 2012, Provident filed suit against the Debtor in the United States District Court for the District of New Jersey (the "New Jersey District Court"), alleging breach of the Personal Guaranties.  On February 6, 2015, the New Jersey District Court entered an order granting final judgment to Provident in the amount of $7,391,404.88 (the "Personal Guaranties Judgment").[6]  On March 24, 2015, the Personal Guaranties Judgment was registered with the United States District Court for the Eastern District of Pennsylvania,[7] and on June 12, 2015, it was certified to the Court of Common Pleas of Bucks

---

[4] Trial Exhibit P-3.

[5] Trial Exhibit P-4.

[6] Trial Exhibit P-5.

[7] Trial Exhibit P-6.

County, Pennsylvania (the "State Court").[8] Provident subsequently sought an order from the State Court compelling the Debtor's responses to post-judgment interrogatories and requests for production of documents, which the State Court entered on March 11, 2015 (the "Post-Judgment Discovery Order").[9] On April 15, 2016, Provident sought an order from the State Court compelling the Debtor's compliance with the Post-Judgment Discovery Order and for sanctions (the "Second Motion to Compel").[10] On July 18, 2016, the Debtor filed a motion for a protective order (the "Protective Order Motion"), and on August 22 and 23, 2016, Provident filed opposition papers to the Protective Order Motion.[11]

On September 22, 2016 (the "Petition Date"), prior to the State Court's resolution of the Second Motion to Compel and Protective Order Motion, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.[12]

### B.   The Debtor's Original Schedules

On October 5, 2016, the day before they were due to be filed, Debtor sought a 14-day extension to file, *inter alia*, his Schedules and Statements, and on October 13, 2016, the Debtor filed his Schedules and Statements.[13] Because, as discussed below, Provident argues that the Debtor's Schedules provide a basis for finding that he is not entitled to a general discharge under §727(a)(2), it is necessary to summarize certain aspects of those Schedules.

With respect to his assets, the Debtor represented in his Schedule A/B that he owns a property located at 3525 Wellsford Lane, Doylestown, Pennsylvania (the "Doylestown Property") in fee simple,

---

[8] Trial Exhibit P-7.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Bankr. Docket No. 1.

[13] The docket reflects that this Court did not enter an order approving or denying the Debtor's request for an extension of the deadline to file his Schedules and Statements prior to his filing them on October 13, 2016.

4

with "another."[14]  The Debtor valued the Doylestown Property at $1,700,000.00.[15]  The Debtor represented that he owned or had an equitable interest in household goods and furnishings valued at $12,500.00, electronics valued at $1,500.00, and watches valued at $7,500.00.[16]  The Debtor also represented that he did not own or have a legal or equitable interest in any financial assets, including cash, deposits of money, securities, retirement or pension accounts or other retirement investments.[17]  In his Schedule C, the Debtor stated that he was claiming state and federal exemptions pursuant to §522(b)(3) of the Bankruptcy Code and listed certain property as exempt, but did not list the Doylestown Property.[18]  However, in his Form 108 Statement of Intention (the "Statement of Intention"), the Debtor did state that he was claiming the Doylestown Property as exempt and intended to retain it and "pay as agreed."[19]

With respect to his liabilities, the Debtor identified Provident as having a $7,391,404.88 unsecured claim based on a "guarantee of corporate obligation."[20]  The Debtor also identified the Trustees of Mosaic and Terrazzo Welfare Fund as having a $317,005.66 unsecured claim based on "union benefits."[21]

With respect to his income and expenses, the Debtor represented in his Schedule I that he was employed by Platinum Maintenance Services ("Platinum Maintenance") and had gross monthly wages of $19,184.88, which after deductions totaled $13,902.10.[22]  The Debtor represented in his Schedule J that his ongoing monthly expenses totaled $14,623.33, or $721.23 more than his net monthly income.[23]

---

[14] Bankr. Docket No. 14, Schedule A/B, Question 1.1.

[15] *Id.*

[16] Bankr. Docket No. 14, Schedule A/B, Questions 6, 7 and 12.

[17] Bankr. Docket No. 14, Schedule A/B, Questions 16 to 36.

[18] Bankr. Docket No. 14, Schedule C, Questions 1 and 2.

[19] Bankr. Docket No. 16.

[20] Bankr. Docket No. 14, Schedule E/F, Question 4.4.  Designation of Provident's claim as unsecured is inconsistent with the Debtor's Lien Avoidance Motion seeking to avoid Provident's judgment lien, but the Court interprets the Lien Avoidance Motion as the Debtor's subsequent recognition that Provident holds a secured claim based on the Personal Guaranties Judgment.

[21] Bankr. Docket No. 14, Schedule E/F, Question 4.6.

[22] Bankr. Docket No. 14, Schedule I, Question 2.

[23] Bankr. Docket No. 14, Schedule J, Question 4.4.

### C. The Debtor's Lien Avoidance Motion and Amended Schedules

On November 30, 2016, the Debtor filed the Lien Avoidance Motion, seeking to avoid Provident's judicial lien pursuant to §522(f) of the Bankruptcy Code because the Debtor "claimed [the Doylestown Property] as exempt under the state exemptions of 11 U.S.C. Section 522(b)(3)(B) as the property is held jointly with the Debtor's spouse as tenants by the entireties."[24] On December 14, 2016, Provident filed a response to the Lien Avoidance Motion (the "Lien Avoidance Response"), arguing that the Debtor's assertion that Provident's judicial lien impaired his exemption with respect to the Doylestown Property was contradicted by his Schedule A/B, which did not claim such an exemption, and that the Debtor's assertion that the Doylestown Property was owned jointly with the Debtor's spouse as tenants by the entireties was contradicted by his Schedule A/B, which stated that he owned the Doylestown Property in fee simple.[25]

The next day, on December 15, 2016, the Debtor filed an amended Schedule C that claimed an exemption for the Doylestown Property pursuant to §522(b)(3)(B) as property the Debtor held as a tenant by the entirety.[26] On December 19, 2016, the Debtor filed an amended Schedule A/B, representing that he owns the Doylestown Property with "another" as tenants by the entireties, rather than in fee simple as stated in his original Schedule A/B.[27]

On February 1, 2017, the Court held a hearing on the Lien Avoidance Motion and the Lien Avoidance Response. At the hearing Provident conceded that, in light of the Debtor's amended Schedules, Provident's judgment lien was avoidable.[28] Provident argued, however, that given the pending Nondischargeability Action, the avoidance of its judgment lien should be suspended until after the

---

[24] Bankr. Docket No. 25.

[25] Bankr, Docket No. 30.

[26] Bankr. Docket No. 32, Schedule C, Question 2.

[27] Bankr. Docket No. 34, Schedule A/B, Question 1.1.

[28] Audio Transcript, February 1, 2017 Hearing at 11:02 to 11:03; 11:07 to 11:08; Bankr. Docket No. 40, *Memorandum of Law of Provident Bank in Opposition to Debtor's Motion to Avoid Lien/Judgment* (the "Provident Lien Avoidance Brief"), at p. 5-6.

6

Nondischargeability Action was resolved (the "Lien Avoidance Timing Issue").[29] The Debtor, in response, argued that his exemptions are unconditional and "forever exempted" under §522(c) of the Bankruptcy Code and Supreme Court precedent, such that even if the Debtor were determined to not be entitled to a discharge of the Provident debt, the Court should not suspend entry of an order avoiding Provident's lien.[30] The Court required the parties to submit briefs on the issue and took the matter under advisement.[31] On March 3, 2017, Provident and the Debtor each submitted briefs in support of their positions on the Lien Avoidance Motion.[32]

### D.  Provident's Nondischargeability Action

On December 16, 2016, Provident filed a Complaint in the Nondischargeability Action (the "Complaint").[33] The Complaint sets forth three counts.

First, by Count I of the Complaint, Provident objects to the Debtor's general discharge pursuant to §727(a)(2) of the Bankruptcy Code, which prohibits a debtor's discharge where the debtor "with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed – (A) property of the debtor within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. §727(a)(2). Provident asserts that the Debtor concealed his property from Provident by ignoring the State Court's Post-Judgment Discovery Order and filing his bankruptcy petition before a determination of the Second Motion to Compel.[34] Provident also asserts that the Debtor's failure to initially claim an exemption for his interest in the Doylestown Property and representation of "scant

---

[29] Audio Transcript, February 1, 2017 Hearing at 11:03 to 11:04; Provident Lien Avoidance Brief, at p. 5-6.

[30] Audio Transcript, February 1, 2017 Hearing at 11:05.

[31] Audio Transcript, February 1, 2017 Hearing at 11:08.

[32] Bankr. Docket Nos. 40, 42.

[33] Adv. Pro. Docket No. 1.

[34] Complaint, at ¶26.

7

personalty" in his Schedules "raises an issue as to whether he actually resides in the Doylestown Property or uses it for a business or some other purpose."[35] Provident further questions the veracity of the disclosures in the Debtor's Schedule A/B in light of the fact that he claims $19,184.88 in gross monthly income yet allegedly has no financial assets to speak of, which Provident asserts "raise[s] the issue as to where [the Debtor] does put his monthly income."[36] According to Count I of the Complaint, the Debtor "is continuing his pattern of concealment to the detriment of all of his creditors and should be denied a discharge pursuant to §727(a)(2) of the Bankruptcy Code."[37]

Second, by Count II of the Complaint, Provident objects to the discharge of the Personal Guaranties Judgment pursuant to §523(a)(2)(A) of the Bankruptcy Code, which excepts from a general discharge under §727 any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). Provident asserts the Debtor "made representations of his financial ability to honor the Personal Guaranties knowing that such representations were false."[38] As such, Provident asserts that the Debtor should be denied a discharge of the Personal Guaranties Judgment pursuant to §523(a)(2)(A) of the Bankruptcy Code on the grounds of false representations.[39]

Third, by Count III of the Complaint, Provident objects to the discharge of the Personal Guaranties Judgment pursuant to §523(a)(2)(B) of the Bankruptcy Code, which excepts from a general discharge under §727 any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (B) use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor

---

[35] Complaint, at ¶37.

[36] Complaint, at ¶38.

[37] Complaint, at ¶40.

[38] Complaint, at ¶43.

[39] Complaint, at ¶47.

is liable for such money, property, services or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. §523(a)(2)(B). Provident asserts that the Debtor obtained the Specialty Flooring Loans "by use of the Personal Guaranties, which were statements in writing that he knew to be materially false."[40] Provident asserts that it reasonably relied on the Debtor's false statements, which the Debtor signed with the intent to deceive Provident.[41] As such, Provident asserts that the Debtor should be denied a discharge of the Personal Guaranties Judgment pursuant to §523(a)(2)(B) of the Bankruptcy Code based on the use of a false statement in writing respecting the debtor's financial condition.[42]

On January 18, 2017, the Debtor filed an Answer to the Complaint, generally denying that Provident is entitled to the relief it seeks.[43] On January 22, 2018, the Court held a trial in the Nondischargeability Action ("Trial"). At Trial, Mark P. Jones ("Mr. Jones"), a commercial loan workout officer for Provident, testified on behalf of Provident. The Debtor testified on his own behalf. Various documents were also admitted into evidence. At the close of Trial, the parties were directed to submit proposed findings of fact and conclusions of law, which both parties did on March 15, 2018.[44]

## III. DISCUSSION

The Court believes the grant or denial of the Debtor's discharge may dictate whether Provident's judgment lien can be avoided. The Court will therefore first resolve the Nondischargeability Action before turning to the Lien Avoidance Motion.

---

[40] Complaint, at ¶50.

[41] Complaint, at ¶¶51, 52.

[42] Complaint, at ¶53.

[43] Adv. Pro. Docket No. 5.

[44] Adv. Pro. Docket Nos. 19, 20.

**A.    The Nondischargeability Action**

**i.    The Legal Standard for Nondischargeability Under §727(a)(2)**

Section 727's discharge provision is at the heart of the Bankruptcy Code's fresh start provisions, and the section is to be construed liberally in favor of the debtor. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to §523, is an extreme step and should not be taken lightly."). A party objecting to discharge under §727(a) bears the burden of proving its objection by a preponderance of the evidence. *See, e.g., First Am. Title Ins. Co. v. Coven (In re Coven)*, 2007 U.S. Dist. LEXIS 28181, at *16 (D. N.J. Apr. 17, 2007) (*citing Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272 (Bankr. E.D. Pa. 2006)).

In order to obtain relief under §727(a)(2)(A), a plaintiff must establish four elements: (1) the debtor transferred, removed or concealed property; (2) the property belonged to the debtor; (3) the conduct occurred within one year of the petition date; and (4) the conduct was intended to hinder, delay or defraud a creditor. *Shubert v. Grasso (In re Grasso)*, 537 B.R. 216, 221-22 (Bankr. E.D. Pa. 2015) (*citing In re Von Kiel*, 550 Fed Appx. 105, 2013 WL 6768147 (3d Cir. 2013)); *see also Spitko*, 357 B.R. at 299 (identifying three elements to be proven: (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that both the disposition and subjective intent occurred within the one-year period before the petition was filed). The cause of action under §727(a)(2)(B) is identical except that, rather than focusing on prepetition conduct, it requires proof that the debtor engaged in misconduct with respect to property of the estate post-petition. *Grasso*, 537 B.R. at 221-22; *see also Hampton v. Young (In re Young)*, 576 B.R. 807, 812 (Bankr. E.D. Pa. 2017) (In order to obtain relief under §727(a)(2)(B), a plaintiff must establish the following four elements: (1) the debtor committed an act after the date of filing the petition; (2) the debtor committed the act with the intent to defraud a creditor or officer responsible for administration of the estate; (3) the act was one of the debtor

10

or the debtor's authorized agent; and (4) the act consisted of transferring, removing, destroying or concealing any of the debtor's property) (*citing Rosen*, 996 F.2d at 1531).

Here, Provident has alleged that the Debtor has concealed property belonging to him or to the estate.[45] In order to prove concealment, it must be shown that the Debtor retained an interest in the transferred property. *JRC Lumber Corp. v. Corona (In re Corona)*, 2010 Bankr. LEXIS at *39-40 (Bankr. D. N.J. Apr. 5, 2010). Where concealment of property is in issue, the Third Circuit Court of Appeals has defined concealment to include preventing the discovery of or the withholding of knowledge of the property. *In re Henderson*, 134 B.R. 147, 157 (Bankr. E.D. Pa. 1991) (*citing U.S. v. Schireson*, 116 F.2d 881, 884 (3d Cir. 1940)).

Importantly, while §727(a)(2)(A) generally only encompasses a debtor's bad acts within one year of the bankruptcy filing, the Third Circuit Court of Appeals has adopted the "continuous concealment" doctrine to evaluate whether an act falls within the statute's temporal limit. *Rosen*, 996 F.2d at 1531; *see also Henderson*, 134 B.R. at 157. Under the continuous concealment doctrine, "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *Rosen*, 996 F.2d at 1531 ("This doctrine does not negate the 'act' requirement of §727 but merely recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered conduct during the year before bankruptcy warranting a denial of discharge."). As such, a concealment initiated prior to the one-year period but continuing into that period will fulfill the act requirement, but the party objecting to discharge must still prove an improper subjective intent during the year before the bankruptcy in order to succeed. *Id.* at 1532-33. The two common characteristics of cases involving the continuous concealment doctrine are (a) the "transfer" of property by a debtor who, despite the transfer, retains a beneficial or equitable interest in the property; and (2) the debtor continues to treat the property in the same manner as before the alleged transfer. *Henderson*, 134 B.R. at 157.

---

[45] Complaint, at ¶¶26, 27, 40.

11

Establishing the requisite scienter under §727(a)(2) imposes a considerable burden on a plaintiff objecting to a debtor's discharge, as the intent contemplated under §727(a)(2) requires a plaintiff to show that the debtor had an actual, specific intent to defraud, hinder, or delay a creditor. *Vara v. Clark (In re Clark)*, 2018 Bankr. LEXIS 3122, at *13 (Bankr. E.D. Pa. Oct. 10, 2018); *Hampton*, 576 B.R. at 812 (*citing In re Burke*, 532 B.R. 765, 769 (Bankr. E.D. Pa. 2015)). However, because a debtor is unlikely to admit directly that his or her actions were motivated by fraud, courts may base a finding of intent to defraud on circumstantial evidence and inferences drawn from the debtor's course of conduct. *Clark*, 2018 Bankr. LEXIS 3122, at *13; *Hampton*, 576 B.R. at 812; *Corona*, 2010 Bankr. LEXIS at *40. Courts will also consider "badges of fraud" in determining whether it is appropriate to infer the existence of actual fraudulent intent. *Clark*, 2018 Bankr. LEXIS 3122, at *14.[46]

### ii. Provident Has Established the Requirements for Nondischargeability under §727(a)(2)

Provident's argument that the Debtor should be denied a general discharge pursuant to §727(a)(2) is based on two grounds: (a) the Debtor "concealed his property from Plaintiff's lawful right to enforce the collection of its Judgment by ignoring a lawfully issued State Court order that he submit to Plaintiff's Post Judgment Discovery Requests,"[47] and (b) the Debtor's bankruptcy Schedules lack information about his assets that continues a pattern of concealment.[48]

Turning first to the Debtor's conduct in post-judgment discovery in the State Court, Provident did not establish that the Debtor's failure to answer post-judgment discovery constituted actual, specific intent to hinder, delay, or defraud Provident. While it may be that, had the State Court determined the Second

---

[46] The badges of fraud courts have considered are: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of a business to a lienor who transferred the assets to an insider of the debtor. *Clark*, 2018 Bankr. LEXIS 3122, at *14.

[47] Complaint, at ¶26.

[48] Complaint, at ¶¶27-40.

12

Contempt Motion, the Debtor would have been subject to sanctions, the Debtor's bankruptcy filing stayed the litigation in the State Court. Therefore, no determination was made regarding whether the Debtor engaged in inappropriate or bad faith conduct in the State Court discovery. This Court was not presented with any testimony or other evidence regarding the nature of the discovery Provident requested, the Debtor's reason or lack thereof for not responding to it, why the Debtor moved for a protective order, or any other information that would allow this Court to make a determination as to whether the Debtor intentionally sought to hinder, delay, or defraud Provident in failing to respond to discovery in the State Court. It could be that the discovery Provident sought was impermissibly overbroad. It could be that the Debtor had no responsive documents. It could be that the Debtor did not believe he had an obligation to respond. Without evidence regarding the nature of the discovery sought and the reasons why the Debtor did not provide responses, this Court is not in a position to find that such failure constituted specific intent to conceal his assets, as required under §727(a)(2).

Next for consideration is Provident's argument that the lack or incompleteness of disclosures in the Debtor's Schedules supports a finding that he is not entitled to a discharge. With respect to the Doylestown Property, the Debtor's original Schedule A/B listed the property among the Debtor's assets, held in fee simple ownership. The Debtor's original Schedule C failed to claim an exemption of the Debtor's interest in the Doylestown Property. Provident's Lien Avoidance Response noted both of these facts, and within days the Debtor filed amended Schedules to reflect that he owned the Doylestown Property as tenant by the entirety with his wife and was claiming an exemption for his interest in the property, the latter of which was consistent with the Debtor's Statement of Intention filed on the same day his original Schedules were filed. There is no doubt that debtors must file true and correct bankruptcy schedules in order to give the bankruptcy court and all parties-in-interest a complete and accurate picture of their financial position. *See, e.g., Bezner v. Rittweger (In re Rittweger)*, 2008 Bankr. LEXIS 425, at *5 (Bankr. D. N.J. Feb. 14, 2008) (*citing In re Tully*, 818 F.2d 106, 111 (1st Cir. 1987)). It is also true, however, that debtors will at times make innocent mistakes in completing their petition, Schedules and Statements, which when subsequently corrected once discovered, do not serve as a basis for denying the

13

debtor's discharge on the grounds that the debtor concealed assets to intentionally hinder, delay or defraud a creditor.  *See, e.g., McDermott v. Govani (In re Govani)*, 509 B.R. 675, 684-686 (Bankr. N.D. Iowa 2014) (denying the trustee's objection to discharge and finding errors and omissions in the Debtors' schedules, later corrected, were the product of innocent oversight rather than intent to hinder, delay, or defraud creditors).  The Court finds the Debtor's errors and omissions with respect to his interest in and claimed exemption with respect to the Doylestown Property were in the nature of innocent mistakes, rather than a continuation of a pattern of concealment as Provident alleges, and do not constitute grounds for denial of the Debtor's discharge pursuant to §727(a)(2).

       The Court also finds meritless Provident's assertion that the Debtor's representations in his Schedule A/B regarding his personal property constitute an attempt to conceal assets.  At Trial, the Debtor's counsel questioned Mr. Jones regarding the grounds for Provident's assertion that the Debtor concealed personal property in his Schedules.[49]  Mr. Jones testified that Provident believed the Debtor was concealing assets because the December 31, 2009 financial statement the Debtor submitted to Provident in connection with the Personal Guaranties identified personal assets of $277,700.00, whereas the Debtor's Schedule A/B identified only $12,000.00.[50]  Underscoring the speculative nature of Provident's position, when asked why Provident believed the Debtor was concealing furniture and appliances, Mr. Jones responded "While I've never been in [their] home I would suspect that it's very nicely furnished in light of the fact that it has a value in excess of a million and a half dollars."[51] Provident, however, put forth no evidence supporting its position that the Debtor has more or more valuable personal property than he has represented in his Schedules.  By contrast, the Debtor testified that the furniture in the home was nearly 15 years old, and he valued it based on his own research of what he could expect to obtain in a liquidation scenario.[52]  Based on the testimony of both Mr. Jones and the

---

[49] Trial Transcript, 76:6 to 77:21.

[50] Trial transcript, 76:19 to 77:21.

[51] Trial Transcript, 76:6 to 76:16.

[52] Trial Transcript, 121:3 to 121:20.

14

Debtor at Trial, the Court finds that Provident failed to satisfy its evidentiary burden to support its assertion that the Debtor has concealed personal property.

This leaves Provident's final argument with respect to the Debtor's Schedules, which is that the Debtor's responses in his Schedule A/B regarding his income and financial assets "raise the issue as to where [the Debtor] does put his monthly income." The Debtor testified that the last time he had a checking or savings account individually or jointly was approximately 2011.[53] According to the Debtor he removed his name from his bank account at that time, leaving it only in his wife's name, after a union in New York placed a lien on the account due to Specialty Flooring's late payment of benefits.[54] The Debtor is the sole wage earner in his household, but all wages he earned and continues to earn are deposited in the bank account held in his wife's name, with his wife then paying bills for the Debtor and his family's monthly living expenses from that account.[55] The Debtor testified that from May of 2012 through December of 2017, including at the time he filed his bankruptcy petition, he was an employee of Platinum Maintenance, which issued his wage checks to him by hand-delivering them or, if he was not available to take hand delivery, by mailing them to his wife.[56] At the time of Trial the Debtor had been working for three weeks with a new employer, Alpine Painting, and his paychecks were similarly being direct-deposited into the bank account held in his wife's name.[57]

The Court finds that the Debtor's testimony, and most critically his admission that in 2011 he removed his name from his bank account effectively to avoid a creditor's collection efforts and has never thereafter deposited his substantial monthly earnings into an account in his own name, establishes Provident's position that the Debtor has concealed his income from creditors with specific intent to hinder, delay or defraud them. As noted above, the Third Circuit recognizes the doctrine of "continuous

---

[53] Trial Transcript, 96:19 to 96:23.

[54] Trial Transcript, 96:24 to 97:25.

[55] Trial Transcript, 98:13 to 99:20; 120:19 to 121:2.

[56] Trial Transcript, 100:8 to 105:25; 112:2 to 112:17.

[57] Trial Transcript, 106:1 to 106:19.

concealment" of assets in the scenario where a debtor concealed assets outside of the statute's one-year look-back period, but that concealment continued into the statutory window. The requirements of that doctrine may be found to have been met where the debtor transferred property outside the look-back period but retained a beneficial or equitable interest in the property and continued to treat it in the same manner as before the transfer. *See, e.g., Corona*, 2010 Bankr. LEXIS 2022, at *40. In addition to these requirements, an objector still must establish the debtor's actual intent to hinder, delay or defraud. *Id.*

Here, each of these requirements has been established by a preponderance of the evidence by the Debtor's own testimony. The Debtor acknowledged that his impetus for removing his name from the bank account he shared with his wife in 2011 was to evade a union creditor's lien efforts due to late payment of union benefits. Therefore, unlike instances where a court must look to badges of fraud to determine whether a debtor had specific intent to hinder, delay, or defraud creditors when making a transfer, this case presents the rare instance where a debtor has admitted to having that specific intent. The Court also finds that this intent continued into the one-year look-back period under §727(a)(2), and indeed continued through the Petition Date and beyond. The Debtor testified that since removing his name from the account he has never deposited another paycheck in an account in his own name, instead continuing to deposit his substantial income into the account maintained in his wife's name. The Debtor testified that from May of 2012 through December of 2017, well past the time he filed his bankruptcy petition, his wage checks were issued to him by hand delivery or by mailing them to his wife. These paychecks were all deposited into the account bearing only his wife's name, thus designed to shield them from creditors' collection efforts.

Moreover, the Debtor admitted that although he deposited all paychecks into his wife's account, he never departed with his interest in these funds. Rather, they have been used to pay the monthly living expenses of the Debtor and his family. Where the account ownership was modified in the first place to avoid creditor collection efforts, this does not present a case where a married couple innocently deposits wages into a pre-existing account bearing the name of one spouse or the other while using that account as a joint account. Here the Debtor, facing a creditor's collection efforts on a debt for which he alone was

16

Document Page 17 of 19

liable, purposefully removed himself from legal ownership of the bank account to hinder those collection efforts, but continued to deposit his wages into the account and continued to use the funds in that account for his own benefit. The Third Circuit has found that concealment includes preventing the discovery of or the withholding of knowledge of property. *Henderson*, 134 B.R. at 157. The Debtor's testimony established that he engaged in precisely this type of concealment by depositing his wages into his wife's account for the years leading up and post-dating the Petition Date, hidden from his creditors, all the while retaining a beneficial or equitable interest in these funds. This is a classic example of the application of the continuous concealment doctrine, and it renders the Debtor's debts nondischargeable pursuant to §727(a)(2) of the Bankruptcy Code.

### iii. Nondischargeability Under §§523(a)(2)(A) and 523(a)(2)(B)

Because the Court has determined that the Debtor is not entitled to a discharge of his pre-petition debts pursuant to §727(a)(2) of the Bankruptcy Code, including the Personal Guaranties Judgment held by Provident, it is unnecessary for the Court to determine whether Provident has also satisfied its burden for establishing nondischargeability under §§523(a)(2)(A) or 523(a)(2)(B).

### B. The Lien Avoidance Motion

As noted above, given the Debtor's amended Schedules, Provident conceded at the February 1, 2017 hearing on the Lien Avoidance Motion that its judicial lien could be avoided. Provident, however, pressed its position on the Lien Avoidance Timing Issue, arguing that avoidance should not be effective immediately but instead should be suspended pending the determination of the Nondischargeability Action. The Debtor argued in response that §522(c) and the United States Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415 (2014), rendered the Debtor's entitlement to exempt his interest in the Doylestown Property unconditional such that Provident's judgment lien could be avoided if it impaired that exemption, regardless of whether the Debtor receives a discharge of Provident's debt. The Court asked the Parties to submit post-hearing briefing. Provident's brief addressed only the Lien Avoidance Timing Issue, while the Debtor's brief repeated his argument at the hearing that the Debtor is entitled to claim the exemption and avoid Provident's lien regardless of whether a discharge is granted.

17

The Court has now resolved the Nondischargeability Action, finding the Debtor is not entitled to a discharge. As such, the Lien Avoidance Timing Issue is moot, and the issue remaining for the Court is whether, in light of that determination, the Debtor is still entitled to claim an exemption in the Doylestown Property and avoid Provident's lien to the extent it impairs the exemption. The Court believes, however, that Provident has not been given the opportunity to address that issue because, at the time of the February 1, 2017 hearing on the Lien Avoidance Motion, the issue argued and to be briefed was the Lien Avoidance Timing Issue.

The Court will therefore give the Parties the opportunity to address whether the denial of the Debtor's discharge precludes him from claiming an exemption in the Doylestown Property and avoiding Provident's judgment lien to the extent it impairs that exemption.

## IV.   CONCLUSION

For the reasons discussed above, this Court will (i) enter judgment in favor of Provident in the Nondischargeability Action, and (ii) set a status hearing for further proceedings on the Lien Avoidance Motion.

An Order consistent with this Memorandum will be entered.

Dated: July 25, 2019

MAGDELINE D. COLEMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE

Prince A. Thomas, Esquire
Fox Rothschild, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Jon M. Adelstein, Esquire
Adelstein & Kaliner, LLC
350 S. Main Street, Suite 105
Doylestown, PA 18901

Robert H. Holber, Esquire
Robert H. Holber PC
41 East Front Street
Media, PA 19063

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912